### Springfield Electric Light & Power Company v. John J. Mott.

1. ASSUMED RISK—*when instruction. upon, properly refused.* An instruction upon the subject of assumed risk is properly refused where no such defense was interposed in the trial of the cause.

2. INSTRUCTION—*when refusal of "cautionary," not error.* Where an instruction belonging to the class termed "cautionary" is asked, which embodies a number of propositions, it is not error for the court to refuse the same where he has properly determined to refuse such instruction upon any one of the propositions enumerated.

Action on the case for personal injuries. Appeal from the Circuit Court of Sangamon County; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the November term, 1904. Reversed and remanded. Opinion filed April 20, 1905.

WILSON, WARREN & CHILD, for appellant.

R. H. PATTON and E. E. BONE, for appellee.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

Appellee recovered a verdict and judgment against appellant in the Circuit Court of Sangamon County, for $1,000, for a personal injury alleged to have been sustained by him while unloading electric light poles from a wagon. It is urged by appellant for a reversal of the judgment, that the verdict is against the manifest weight of the evidence upon the issue as to whether the injury complained of resulted in the manner alleged in the declaration and testified to by appellee, and upon the issue as to whether appellee and appellant's foreman, Flannigan, whose negligence it is alleged caused the injury, were fellow-servants; and that the trial court erred in giving and refusing instructions.

On November 3, 1903, appellee was one of a gang of men employed by appellant in unloading and setting poles in the city of Springfield. R. L. Flannigan was foreman of the gang, having authority to employ and discharge men and to direct the conduct of the work.

Appellee's right of recovery in this case is predicated upon his uncorroborated version of the occurrence in question. He testified, that in response to the call of the foreman Flannigan, he and one Evans went to Flannigan's assistance in unloading poles from a wagon; that they lifted the large end of the pole from the wagon bed onto the front wheel of the wagon and lifted the small end of the pole onto the hind wheel; that while the pole was resting on the four-inch tires of the wagon wheels, Flannigan directed appellee and Evans to "hold it;" that Evans held the pole at the small end and appellee at a point five or six feet from the small end, about as high as he could reach; that

Flannigan, without giving any warning as to what he was going to do, went to the opposite side of the wagon and jerked the large end of the pole with a crow-bar; that as the large end of the pole went down the small end went up and threw appellee down and under the pole; that as he was jerked up and thrown down he felt something burst in his bowels; that he lay under the pole on the ground about ten seconds before he was able to crawl out; that the injury immediately developed an external swelling as large as his arm, diagnosed by the physician, who attended him for the first time on June 22, 1904, as an inguinal hernia. The witnesses Evans, Flannigan, Womach and DeFrates, all of whom were within a few feet of appellee and in a position to observe what took place when, as he testifies, he was thrown down and laid on the ground ten seconds, did not see him struck or jerked by the pole or fall to the ground. To none of the persons present, did appellee mention the fact of his injury, except as he testifies, he said to Evans, " By gosh, that pretty near done me up," and as to this alleged remark he is not corroborated by Evans. Notwithstanding the serious and painful injury claimed to have been then sustained by appellee, he continued the work of digging holes the same day and for days and weeks immediately following. That appellee has a hernia does not admit of doubt, but it is incumbent upon him to show by a preponderance of the evidence that it resulted from the negligence of appellant upon the occasion and under the circumstances alleged in his declaration. We have no hesitancy in saying that this appellee failed to do, and that the verdict of the jury upon that issue is against the manifest weight of the evidence in the record.

There is a direct conflict between appellee and Flannigan as to the alleged direction by the latter to the former, "to hold" the pole. If such direction was given by Flannigan in his capacity as foreman or vice-principal, and while in obedience to such direction appellee was injured by the negligence of Flannigan as alleged in the declaration, appellant is liable. These were questions of fact, properly submitted to the jury for determination.

The court did not err in giving the first instruction offered by appellee. Assumption of risk by appellee was not interposed as a defense in the case, and the declaration alleged all the facts necessary to be proven, to authorize a verdict against appellant.

The court refused to give to the jury, what purported to be a single instruction, offered by appellant, advising the jury, first, that it was their duty to find a verdict from the evidence under the instructions of the court; second, that all of the instructions had application to the facts in controversy in the case; third, that they must not disregard or go contrary to such instructions, nor find a verdict contrary to the law as set forth in such instructions; fourth, that they must not arrive at their verdict, or any part of it, by lot or by chance; fifth, that no juror should consent to a verdict which does not meet with the full approval of his own judgment and conscience after due consideration of the evidence and the law as set forth in the instructions, and after due deliberation with his fellow jurors. The instructions embodied in this request are what are termed, cautionary instructions, the giving or refusing of which is largely discretionary with the trial judge. The fourth and fifth instructions in the foregoing, are of doubtful propriety in any case, and while it would not be error to give them, they may well be refused and such refusal would not warrant a reversal. These instructions having been tendered to the trial judge in gross, if he determined in the exercise of his judicial discretion to refuse any one of them he was justified in refusing all, and we are not disposed to hold that he erred in so doing.

Because this judgment is predicated upon a verdict rendered against the manifest weight of the evidence, it will be reversed and the cause remanded.

*Reversed and remanded.*